UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| ROBERT A LOPEZ,<br><br>        Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | Case No. ED CV 16-00297-AS<br><br>**MEMORANDUM OPINION AND**<br><br>**ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On February 18, 2016, Plaintiff filed a Complaint seeking review of the denial of his applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate

Judge. (Docket Entry Nos. 11-12). On June 27, 2016, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 14-15). The parties filed a Joint Position Statement ("Joint Stip.") on September 8, 2016, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 16).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed February 22, 2016 (Docket Entry No. 9).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 30, 2012, Plaintiff, formerly employed as a clerical administrator for property management/banks/law firms, a front desk clerk at a hotel, an apartment property manager, and a telemarketer (see AR 38-39, 283, 301-07), filed applications for Disability Insurance Benefits and for Supplemental Security Income, alleging a disability since September 25, 2010. (See AR 249-55, 258-64). On January 23, 2014, the Administrative Law Judge ("ALJ"), Nancy Lisewiski, heard testimony from Plaintiff and vocational expert Troy Scott. (See AR 57-70). On April 14, 2014, the ALJ issued a decision denying Plaintiff's applications. (See AR 16-30). The ALJ noted the September 24, 2010 decision of an administrative law judge finding that Plaintiff was not disabled from August 28, 2007 through September 24, 2010 (see AR 75-81), found that Plaintiff had not rebutted the presumption of continuing nondisability with "changed circumstances" material to the disability determination, and consequently, based on the principles of res judicata, adopted the findings of the prior administrative judge. (AR 16). After determining that Plaintiff had severe impairments --

2

"coronary artery disease; morbid obesity; hypertension; diabetes; and low back pain" (AR 19)[1] --, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work[3] with the following limitations: sitting and standing at will; no more than occasional bending, stooping crouching, crawling, balancing, kneeling, and climbing ramps; no walking on uneven surfaces; no climbing ladders, ropes or scaffolds; and no exposure to extreme cold and vibrations. (AR 22-28). Finding that Plaintiff was capable of performing his past relevant work, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28-29).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 246-47). The request was denied on December 29, 2015. (AR 1-6). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) consider Plaintiff's testimony and make proper credibility findings; and

---

[1] The ALJ found that Plaintiff's mental impairments -- mood disorder and depression -- were nonsevere. (See AR 19-22).

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

1  (2) determine whether Plaintiff was capable of performing past relevant
2  work. (See Joint Stip. at 3-7, 11-18).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first claim of error, the Court will not address Plaintiff's second claim of error.

**A.  The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to articulate legitimate reasons to find his testimony and statements not fully credible. (See Joint Stip. at 3-7). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff not fully credible. (See Joint Stip. at 7-11).

Plaintiff made the following statements in an undated, unsigned "Function Report - Adult" (see AR 345-52)[4]:

> He lives alone in an apartment. His day consists of staying in bed, mostly watching movies, sleeping 5 to 9 hours, and going to the market when he has food stamps. He does not

---

[4] According to the Court Transcript Index at the beginning of the Administrative Record, Plaintiff's "Function Report-Adult" was dated July 16, 2013. (See Court Transcript Index at 2).

4

allow any visitors, and he tries to avoid public contact. He takes care of his pets, feeding them in the morning and cleaning the litter box at night (if he can get out of bed). Prior to his impairments, he was able to work, where he cooked, did housekeeping, sold and did marketing. His impairments, particularly lower back sciatica, affects his sleep. He is depressed and sad. He is in pain about 80 percent of the time. He takes Flexall for pain, but it makes him sleepy and does not relieve the pain. (See AR 345-46, 348-49).

He has no problem with his personal care, does not need any special reminders to take care of his personal needs and grooming, and does not need help or reminders taking medicine. (See AR 347).

Once or twice a day he prepares his own meals, anything that does not require him to stand more than 1 to 2 minutes (if he feels pain from standing, he must sit for at least 10 minutes). His impairments have limited his ability to eat spicy foods. (See id.).

He does not do chores because of his pain. He hires someone to clean and vacuum and dust. He does not do any yard work because he does not have a yard. (See AR 347-48).

When he goes out, he drives a car. He shops in stores or by computer. When he goes shopping at the market, he needs help because he cannot carry much weight. (See AR 348).

He can pay bills (online), count change, handle a savings account and use a checkbook. (See AR 348-49).

He does not have hobbies and interests, and he does not go places on a regular basis, because he is in pain and is on a tight budget. He does not socialize with others because he does want to be a burden and/or to make others feel sad. (See AR 349-50).

His impairments affect his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, understanding, following instructions, and getting along with others. (See AR 350).

He can walk 10 minutes before needing to rest, and can resume walking after resting for 20 minutes. His ability to pay attention and to finish what he starts depends on his level of interest. He can follow written instructions, as long as he does not have to stand for too long. When asked how well he follows spoken instructions and gets along with authority figures, he stated he avoids public contact. He has not been fired or laid off from a job because of problems getting along with other people. (See AR 350-51).

He does not handle stress well; he goes into a rage and yells at people. He does not handle changes in his routine very well. His unusual fears are feeling like he is being punished and going toward his death. He wears glasses/contacts. (See AR 351).

Plaintiff testified at the January 23, 2014 administrative hearing as follows (see AR 61-67):

He is 5'11" tall and weighs 340 pounds. He drove to the hearing, less than a half mile drive. He is not able to work because of a painful sciatica and because of issues with his blood sugar level. He receives financial support from his father. (See AR 61-62, 66-67).

His sciatica is inflamed and causes him great pain. He attempts to relieve the pain by shifting positions. The only way he can really obtain relief is to lay down in bed and put a heat paid on his left buttocks. (See AR 66).

He has had Type 1 diabetes since he was a juvenile; he has injected himself with insulin since he was 16 years old. Eating breakfast, especially a big breakfast, causes his blood sugar level to shoot dangerously high, causing him to fall asleep. He gives himself Humalog, which combined with regular insulin, brings his blood sugar level down in two to three hours. His blood sugar level runs from 200 to 400, and sometimes higher. He follows a diabetic diet, whenever

possible. When asked whether he tested his blood sugar level that morning, he testified he ran out of test strips the night before, but that he has his meter with him and he is going to go pick up test strips at the pharmacy that morning. (<u>See</u> AR 62, 64-66).

His gall stone problem is in remission. Although he had abdominal pain in November 2013, he no longer has such pain. (<u>See</u> AR 62).

He takes Methocarbamol (Robaxin) for back pain, Carvedilol and Amlodipine for high blood pressure, Plavix for the stents (in 2009 he had two stents placed because he was in risk of a heart attack), Bezopril and Lipitor for cholesterol, Famotidine (Zyrtec) for heartburn, Wellbutrin for depression (he is in mental health treatment), Humulin N (three times a day) and Humalog (3 to 4 times a day) for his diabetes. (<u>See</u> AR 62-65).

The medications make him drowsy and cause him to sleep in the middle of the day every day. Every day he naps 2 to 4 hours to relieve the pain. (<u>See</u> AR 65).

After summarizing Plaintiff's testimony at the hearing (<u>see</u> AR 23), the ALJ addressed Plaintiff's credibility as follows:

> I find the claimant's allegations concerning the intensity, persistence and limiting effects of his symptoms

8

are not fully credible. The allegations of debilitating and limiting symptoms related to back pain, diabetes, and high blood pressure were inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of his symptoms.

The claimant attempted to minimize his daily activities and alleged he slept two to four hours during the middle of the day due to side effects from his medications. However, as mentioned above, the claimant has described activities of daily living, which were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. During a consultative psychological examination, the claimant reported he is able to do household chores, run errands, shop, cook, and dress and bathe himself (Ex. B4F, p.5). In addition, the claimant testified he drove himself to the hearing. I find the claimant's ability to participate in such activities undermines the credibility of the claimant's allegations of disabling functional limitations.

The claimant testified he is unable to control his blood sugar levels and he claimed his levels become so high that he falls asleep and must take time to medication [sic] himself to reduce his symptoms. Despite his allegations, however, there is evidence in the medical record demonstrating the claimant's unwillingness to properly monitor his blood sugar levels as recommended by his treating physicians. At the hearing, the claimant acknowledge he failed to test his blood sugar levels

that morning. Further, despite numerous instructions to do so, the claimant failed several times to present a log of his blood glucose levels during medical treatments for complaints of diabetes (Ex. B7F, pp. 12-15, 29-33). This demonstrates a possible unwillingness to do what is necessary to improve his condition. It may also be an indication that his symptoms are not as severe as he purports.

In addition, the record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which further suggests that the symptoms may not have been as serious as has been alleged. The claimant testified he follows the recommended diabetic diet, but only whenever possible. During treating [sic] in August 2013, the claimant acknowledged he did not strictly adhere to a diabetic diet, which had resulted in significant weight gain (Exh. B7F, p. 9). Further, the claimant cancelled or failed to show up for doctor appointments on a number of occasions (Exhs. B6F, pp. 1, 75, 78, 83). In addition, the record contains clear evidence that the claimant has consciously attempted to minimize medical treatment and maintain physical symptoms in order to increase the chance of obtaining benefits. Notably, in June 2013 at which time the claimant's diabetes was reported as improving, he expressed concern about receiving specialized endocrinology treatment due to the probability that he diabetes would become controlled resulting in his inability for him to obtain disability benefits through Social Security (Exh. B7F, p. 12). Accordingly, I find the

>credibility of the claimant's allegations regarding the severity of his symptoms and limitations is greatly diminished because he expressly stated an unwillingness to do what is necessary to improve his condition and his actions confirm this sentiment.
>
>* * * *
>
>After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(AR 23-24).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also

Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of his symptoms was not fully credible.[5]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion"). Indeed, the ALJ did not even discuss the statements made by Plaintiff in his Function Report. Moreover, the ALJ did not address Plaintiff's credibility with respect to his testimony about his sciatica.

Second, the ALJ's partial discrediting of Plaintiff's testimony based on his ability to perform certain daily activities, such as doing household chores, running errands, shopping cooking, dressing, bathing himself, and driving himself to the hearing, was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th

---

[5] The Court will not consider reasons for finding Plaintiff not fully credible (see Joint Stip. at 10) that were not given by the ALJ in the Decision. See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ improperly relied on Plaintiff's statements about his performance of certain daily activities in a psychological evaluation report dated September 18, 2012 (see AR 530) which were made approximately eleven months prior to Plaintiff's statements in his August 16, 2013 Function Report, and approximately seventeen months prior to Plaintiff's testimony at the January 23, 2014 administrative hearing. Contrary to the ALJ's implied assertion, Plaintiff's testimony that he needed to sleep two to four hours in the middle of the day because of his medications (see AR 65) was not necessarily inconsistent with Plaintiff's statements/testimony about his ability to perform such daily activities. It is not clear from the record, and the ALJ did not attempt to ascertain, the specifics, and/or extent, of Plaintiff's abilities to do such daily activities. Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with his testimony regarding his limitations. See Reddick v. Chater, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to

discredit a claimant's allegations."). Moreover, to the extent that the ALJ relied on Plaintiff's testimony that he drove to the hearing, the ALJ did not appear to take into account Plaintiff's testimony that he had to drive only one-half of a mile (see AR 61).

Third, although an ALJ may discount a claimant's credibility based on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991), it is not clear whether the ALJ considered Plaintiff's explanation for why he did not test his blood sugar levels the morning of the hearing, namely, that he had run out of test strips the night before (see AR 62). See Social Security Ruling 16-3p, 2016 WL 1119029, *9 (March 16, 2016) (". . . [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.").

In addition, while the ALJ properly noted that on August 7, 2013 and April 13, 2014, Plaintiff did not bring logs of his blood sugar

levels, despite previous encouragement to do so (see AR 1027-29, 1046), it does not appear that Plaintiff was asked at the time of those appointments or at the time of the administrative hearing why he did not bring the logs. Moreover, while the ALJ properly noted the statements in the August 16, 2013 report about Plaintiff's lack of strict adherence to a diabetic diet and Plaintiff's weight gain (see AR 1024 ["Pt. reports that he is managing his diabetes but then he notes that he does not adhere strictly to a diabetic diet and that he has gained weight (from 294 to 307#)."], as well as Plaintiff's hearing testimony that he follows the diabetic diet "whenever possible" (see AR 65), it does not appear that at the time of the August 2013 appointment Plaintiff was asked why he was not strictly adhering to a diabetic diet, or that at the time of the administrative hearing Plaintiff was asked about why in August 2013 he was not strictly adhering to a diabetic diet or about what he meant when he testified he followed the diabetic diet "whenever possible."  Finally, although there were medical records concerning Plaintiff's cancellations of, or failure to show up to, medical appointments on February 6, 2012 (see AR 948 [notation that appointment not kept, no indication about nature of appointment]), February 26, 2012 (see AR 943 [notation that appointment not kept, no indication about nature of appointment]), March 13, 2012 (see AR 940 [notation that appointment not kept, no indication about nature of appointment] and February 13, 2013 (see AR 866 [notation that pharmacy appointment not kept, rescheduled for March 4, 2013]), it does not appear that at the administrative hearing Plaintiff was asked about why he cancelled or failed to show up for those appointments. Indeed, the record appears to reflect that Plaintiff attended or kept the most of his diabetes-related appointments (see e.g., AR 950-52, 957 [December 6, 2011], 949, 953-54

[January 13, 2012], 946-47 [February 8, 2012], 939 [March 20, 2012], 1044-48 [April 3, 2013], 938 [April 23, 2012], 937 [May 27, 2012], 888-98 [November 6, 2012], 867-71, 873-77 [January 29, 2013]), 1027-30 [August 7, 2013], 1016-17 [October 4, 2013], 1022-23 [September 10, 2013], 1020-21 [September 17, 2013], 1018-19 [November 19, 2013]).

Fourth, to the extent that the ALJ partially discredited Plaintiff's credibility because of statements expressing concern that endocrinology treatment would impact his ability to obtain disability benefits (see AR 1027 [notations in August 7, 2013 notes from the diabetic clinic at Riverside County Medical Regional Center, as follows: "Pt came to FCC DM Clinic today as Walk-in stating he's concerned if he sees Endocrinology there's a probability his DM will become controlled and he will be unable to get disability (SSSI). Pt states he's been working on getting disability for some time and now that he's 50 (last 2 weeks greater likelihood. Requesting disability paperwork (incl for CLBP) be completed today by DM Clinic."), those statements did not necessarily support the ALJ's assertion that "[Plaintiff] has consciously attempted to minimize medical treatment and maintain physical symptoms in order to increase the chance of obtaining benefits" (AR 24). Simply because Plaintiff expressed concern on August 7, 2013 (approximately three years after the alleged onset of disability date, and approximately 15 months after the filing of Plaintiff's applications) that his improved health might impact his ability to obtain disability benefits does not mean or show that throughout the period at issue (beginning in September 25, 2010) he did not act to improve his physical health, particularly with respect to his diabetes. At the hearing, the ALJ did not ask Plaintiff to explain his statements.

Moreover, those statements were not relevant to Plaintiff's testimony with respect to issues with his lower back.

Fifth, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning his symptoms and limitations, the lack of supporting objective medical evidence cannot, by itself, support an adverse credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

**B.  Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record

as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[6]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 5, 2017

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's error in finding that Plaintiff was capable of performing past relevant work (see Joint Stip. at 11-18). Because this matter is being remanded for further consideration, this issue should also be considered on remand.